DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} A jury convicted Freddy Todd, Jr. of aggravated robbery for stealing $57 and a shotgun from the home of Andrew Burns and hitting Mr. Burns with the weapon when it failed to fire. Mr. Todd has appealed, arguing that his conviction is against the manifest weight of the evidence because Mr. Burns's testimony was inconsistent with statements he made to the police at the time of the incident. This Court affirms because the conviction is not against the manifest weight of the evidence.
 MANIFEST WEIGHT {¶ 2} Mr. Todd's sole assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving *Page 2 
conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten,33 Ohio App.3d 339, 340 (1986).
 {¶ 3} Mr. Todd was convicted of aggravated robbery under Section 2911.01(A)(3) of the Ohio Revised Code. That section provides that "[n]o person, in . . . committing a theft offense . . . or in fleeing immediately after the . . . offense, shall . . . attempt to inflict, serious physical harm on another."
 {¶ 4} Mr. Todd has argued that Mr. Burns's trial testimony was not credible, pointing to various inconsistencies between his testimony and his statements to police at the time of the incident. He has pointed out that Mr. Burns had told police that the gun belonged to his roommate, that the gun had been by the television rather than the front door, and that the money had been on the chair rather than on the television. He has suggested that those inconsistencies and Mr. Burns's "apparently erratic demeanor" on the witness stand led the trial court to question Mr. Burns outside the presence of the jury regarding whether he was under the influence of alcohol or drugs and whether he was testifying based on suggestions from others as opposed to relying on his memory of the events. He has pointed to that questioning as evidence that the trial court must have been concerned about Mr. Burns's credibility. Regardless of the court's reason for questioning Mr. Burns outside the jury's presence, his answers must have satisfied it that he was testifying based on his recollection.
 THE INCIDENT {¶ 5} Mr. Burns testified that he was cleaning his house one afternoon while several neighborhood teenagers were chatting on his front porch. He stepped out onto the porch and noticed that Mr. Todd was talking to the teens about "how to cut and separate drugs." Mr. Burns *Page 3 
said that he told Mr. Todd to leave, but Mr. Todd "took his shirt off and he was getting angry and . . . violent." According to Mr. Burns, Mr. Todd threatened to "`F' [them] up." Mr. Burns testified that he went inside the house to call the police, and Mr. Todd followed him inside. According to Mr. Burns, Mr. Todd "grabbed the money over by the TV . . . and then . . . grabbed the shotgun that was laying right next to the door" and ran outside. Mr. Burns testified that the gun belonged to his roommate.
 {¶ 6} According to Mr. Burns, he ran after Mr. Todd because he knew the gun was loaded and he was concerned for the safety of the teenagers. Mr. Burns testified that, while in the front yard of the house, Mr. Todd pointed the gun at him, cocked it, and pulled the trigger. When it did not fire, Mr. Todd started swinging it around and hit Mr. Burns on the back of the head and on his lower back. Mr. Burns testified that Mr. Todd next poured a bottle of alcohol over his own head, then left the property. Mr. Burns and the teenagers followed Mr. Todd to the parking lot next door, where Mr. Todd turned and threw the empty alcohol bottle at them. Mr. Todd ran away, but did not get far before being stopped by police. At trial, Mr. Burns admitted that, when Mr. Todd pointed the gun at him, Mr. Burns said, "go ahead . . . shoot, because it is not loaded."
 {¶ 7} Officer Hackathorn testified that he and his partner responded to a call involving a man without a shirt carrying a shotgun. According to him, Mr. Burns was "[v]ery frantic, hysterical [l]ike he'd just been traumatized from a serious incident." Officer Hackathorn testified that Mr. Todd was carrying a shotgun and was not wearing a shirt when they caught him. He said they found $57 in the front pocket of his pants. He also testified that the shotgun was loaded, but was inoperable. *Page 4 
 {¶ 8} Mr. Todd called Sergeant Rinn, another Akron police officer, who testified that he interviewed Mr. Burns after the incident. Mr. Burns told him that Mr. Todd had stolen $56 and the shotgun that had been sitting against the wall next to the television. Sergeant Rinn said that Mr. Burns told him the gun had been passed down to him from a family member. According to him, Mr. Burns said the gun was operable and loaded.
 {¶ 9} Mr. Todd testified in his own defense. He admitted that he initially refused to leave the porch. He testified that Mr. Burns went into the house and returned with a gun in his hand. Mr. Todd backed off the porch, but Mr. Burns approached him and pointed the gun at him. According to Mr. Todd, he grabbed the barrel of the gun and twisted it out of Mr. Burns's grasp. Mr. Burns went into his house a second time and returned with a sword and attacked Mr. Todd. Mr. Todd testified that he defended himself with the gun barrel until the teenagers began throwing rocks at him. He then retreated to the neighboring parking lot and threw rocks back at the teenagers. He denied pouring alcohol over himself and removing his shirt.
 {¶ 10} This Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice by rejecting Mr. Todd's explanation of the incident in favor of Mr. Burns's testimony. Mr. Todd was convicted of attempting to inflict serious physical harm in conjunction with a theft. See R.C. 2911.01(A)(3). The jury could reasonably have believed Mr. Burns's testimony that, after stealing the cash, Mr. Todd aimed the shotgun at him and pulled the trigger before striking him with the gun. There were inconsistencies in the details of Mr. Burns's description of the events, but this is not a case in which this Court must disagree with the jury's resolution of the conflicting testimony. See State v. Thompkins, 78 Ohio St. 3d 380, 387 (1997). The officers testified that, when they arrived, Mr. Burns was upset and seemed to be traumatized by the event. Although Mr. Burns admitted that he did not tell the police on the day of the *Page 5 
incident that Mr. Todd had struck him with the gun, he explained that because he was upset at the time, he forgot to include that in the police report.
 {¶ 11} This Court notes that Mr. Todd's testimony also conflicted with the testimony of the police. Mr. Todd denied taking his shirt off during the confrontation, as Mr. Burns had claimed, but Officer Hackathorn testified that Mr. Todd was not wearing a shirt while he fled from them. Despite conflicting evidence, this is not "the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins, 78 Ohio St. 3d 380, 387 (1997) (quoting State v. Martin,20 Ohio App. 3d 172, 175 (1983)). The jury did not lose its way and create a manifest miscarriage of justice by convicting Mr. Todd of aggravated robbery. His assignment of error is overruled.
 CONCLUSION {¶ 12} Mr. Todd's conviction for aggravated robbery is not against the manifest weight of the evidence. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 6 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
 SLABY, P. J. WHITMORE, J. CONCUR. *Page 1